UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VERNELL J. LOGGINS, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 1:18CV00082 ERW |
| ) | |
| JASON LEWIS, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Vernell J. Loggins Jr.'s *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [1].

**I.     BACKGROUND**

Petitioner Vernell J. Loggins, Jr., ("Petitioner") was convicted by jury of one count of first-degree murder.  Petitioner was sentenced to life imprisonment without probation or parole by the Franklin County Circuit Court.  Petitioner filed a direct appeal, and his conviction was affirmed.  Petitioner, then, filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  The post-conviction motion court ("the motion court") denied Petitioner's post-conviction relief motion ("PCR motion").  Petitioner filed an appeal of the denial of post-conviction relief and the motion court's judgment was affirmed.  On April 5, 2018, Petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2254.

The Missouri Court of Appeals, Eastern District, described the facts of Petitioner's convictions as follows:

> On the night of November 1, 2009, Defendant's girlfriend, Stephanie Fields, went to his apartment to confront him about cheating on her. Defendant stabbed Ms. Fields with a knife in her neck, arms, chest, side, and back, inflicting a total of twenty-five stab wounds, and causing her death. Defendant then cut off

1

Ms. Fields' head and forearms and attempted to amputate her right leg. He placed her body in a Toter brand trash can he purchased from Walmart on the morning of November 2, 2009. Defendant left the trash can next to the dumpster in his apartment complex.

On the morning of November 3, 2009, an employee of the apartment complex discovered Ms. Fields' body in the trash can next to the dumpster and told his manager, who called the police. Officer Marc Hillen from the St. Louis County Police Department responded to the report and discovered two trash bags in the dumpster containing, among other items: latex gloves; red-stained paper towels; Resolve cleaner; a Walmart receipt for Resolve cleaner, Tide detergent, and a Toter trash can; three empty ice bags; a Toter trash can label; and mail addressed to Defendant. Officer William Knittle of the Eureka Police Department obtained surveillance video of Defendant purchasing a Toter brand trash can from the Eureka Walmart the morning of November 2, 2009.

The police obtained a warrant to search Defendant's residence and vehicle. The warrant authorized law enforcement to search Defendant's residence for "Knife or knives, cutting instruments, bloody clothing, bloody towels or rags, blood evidence, including blood splatter evidence, body parts, clothing, including Cardinal [sic] baseball cap[.]" Upon execution of the warrant, the negotiator for the Emergency Response Team called Defendant on his cellular telephone and directed him to exit his apartment. Defendant complied and the police placed him under arrest. The police seized an iPhone located on the ground outside his apartment where Defendant was arrested. On November 4, 2009, the police secured a warrant to search the contents of the iPhone and Detective Andrew Hrenak conducted a forensic examination of the iPhone.

The State charged Defendant with murder in the first degree. Prior to trial, Defendant filed a motion to suppress all evidence seized during the search of his apartment on the grounds that the evidence was obtained pursuant to an unlawful search and seizure. The trial court held a hearing on Defendant's motion. Following the hearing, Defendant and the State filed memoranda in support of and opposition to Defendant's motion. In his memorandum, Defendant asserted that seizure of the iPhone exceeded the scope of the search warrant's parameters and the search warrant was not supported by probable cause. In its memorandum against Defendant's motion, the State asserted that the iPhone was validly seized pursuant to a search incident to arrest and that a "reasonable inference can be inferred ... that there is a probability that evidence of a crime is within the defendant's phone." The trial court denied in part and granted in part the motion to suppress and denied suppression of evidence obtained from the iPhone.

At trial, the State presented the testimony of several witnesses, including Detective Hrenak. Detective Hrenak testified about the results of his search of the iPhone. Defense counsel renewed his motion to suppress the images seized from the iPhone and requested an ongoing objection. The court denied his motion and granted him an ongoing objection. Detective Hrenak identified the State's exhibits 136–153 as images he recovered from the portable network graphic filed in the data partition of the iPhone. The exhibits consisted of screenshots of various website searches conducted on the iPhone. The exhibits captured the following

2

>Google searches: "where to buy a trunk," "trunks at Wal–Mart," "food that attracts wil," "attracting wild animals," "what is lime used for," "lime and dead bodies," "lime at Wal–Mart," "where to buy lime in St. Louis," and "how to clean blood from carpet." Additionally, the exhibits showed a blog related to attracting wild animals, a Wikipedia entry containing the words "quick lime," "body disposal," and "decomposition," a search for "what is the best way of covering a dead body?" on Answerbag.com, and a eHow webpage titled "How to clean blood from carpet."[1]

*State v. Loggins*, 445 S.W.3d 105, 107–08 (Mo. Ct. App. 2014).

## II.   LEGAL STANDARD

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. *Id.* at § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v.*

---

[1] These facts are taken directly from the Court of Appeals Memorandum affirming Petitioner's conviction on direct appeal. A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e).

3

*Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). An unreasonable application of clearly established Supreme Court precedent is found where the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id*.

## III.   DISCUSSION

Petitioner asserts the following seven claims in his motion to vacate his convictions: (1) the trial court erred in overruling Petitioner's motion for judgment of acquittal and entering judgment and sentence for murder in the first-degree because there was insufficient evidence put forth by the State to prove Petitioner caused Ms. Fields' death after deliberation; (2) the trial court erred in overruling Petitioner's motion to suppress evidence and admitting the seizure of Petitioner's iPhone because it was seized in violation of Petitioner's rights to be free from unreasonable search and seizure; (3) the trial court erred in overruling Petitioner's motion to suppress evidence and admitting screen images seized from Petitioner's iPhone because the search warrant affidavit did not establish a fair probability that evidence of the crime would be found on the iPhone; (4) the trial court erred in overruling Petitioner's motion to suppress evidence and admitting into evidence screen images seized from Petitioner's iPhone because the search and seizure of the images was outside the scope of the search warrant; (5) trial counsel was ineffective because they failed to move to strike Venireperson Gholson for cause based on her inability to be fair and impartial as shown by her juror questionnaire; (6) trial counsel was ineffective because they waived any objection to the admission of Petitioner's iPhone; and (7) trial counsel was ineffective because they failed to challenge the search of Petitioner's iPhone

4

even though the search warrant failed the particularity requirement.  The Court will address each claim as follows.

     A.     *Claim One – Insufficient Evidence, First-Degree Murder*

In his first claim, Petitioner asserts the trial court erred in overruling his motion for judgment of acquittal of murder in the first-degree because the State failed to prove Petitioner caused the death of Ms. Fields after deliberation.  Petitioner claims there was insufficient evidence presented at trial showing Petitioner "coolly reflected upon the death of Ms. Fields."  ECF No. 1, p. 19.  Petitioner raised this claim in his direct appeal.  The Missouri Court of Appeals held:

> A person commits murder in the first degree when he "knowingly causes the death of another person after deliberation upon the matter."  Section 565.020.1.  Section 565.002(3) provides that deliberation means "cool reflection for any length of time no matter how brief."  "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began."  *Strong*, 142 S.W.3d 717.  Thus, "[d]eliberation need be only momentary."  *State v. Attwood*, 294 S.W.3d 144, 145 (Mo.App. S.D. 2009).  "Deliberation is normally proved by indirect evidence and inferences drawn from circumstances surrounding the murder."  *State v. Stacy*, 913 S.W.2d 384, 386 (Mo.App. W.D. 1996).
>
> Contrary to Defendant's assertion, Missouri courts have repeatedly stated that "[d]eliberation may be inferred when there are multiple wounds or repeated blows."  *State v. Strong*, 142 S.W.2d 702, 717 (Mo. banc 2004); *State v. Johnston*, 957 S.W.2d 734, 748 (Mo. banc 1997); *Stacy*, 913 S.W.2d at 386.  "Even the short amount of time required for the defendant to approach the victim before stabbing her supports the reasonable inference that [he] reflected for at least the time required to reach the victim."  *Stacy*, 913 S.W.2d at 386.  Additionally, signs of a prolonged struggle may be evidence of deliberation.  *State v. Sandles*, 740 S.W.2d 169, 177–78 (Mo. banc 1987).
>
> The record contains sufficient evidence from which a jury could reasonably find deliberation, including the following: Victim left her friend's home at around 9:00 p.m. to confront Defendant, did not answer two of her friend's phone calls at around 10:00 p.m., and answered the third phone call to inform her that she was with Defendant.  Defendant stabbed Victim in the neck, arms, chest, shoulder, side, and back a total of twenty-five times.  Detective

5

> Peeler located blood on the living room carpet, couch, and walls, the kitchen sink, wall, refrigerator, and fan, the hallway wall, the bathroom floor and vanity, and the bedroom baseboard.  Because the evidence shows that Defendant had the opportunity to consider his actions, the jury reasonably found that Defendant deliberated before killing Victim.

ECF No. 28-11, pp. 4–5.

When reviewing a sufficiency of the evidence claim, the question before the federal court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).  This is the exact standard the appellate court applied in reviewing Petitioner's claim on direct appeal.

Here, Petitioner argues the evidence showed Petitioner and Victim were engaged in a heated argument when the crime took place and maintains his position "there is no deliberation during a heated argument."  ECF No. 40, p. 5.  Petitioner claims "[d]espite the overwhelming evidence that there could never be deliberation during a heated argument and confrontation, the appellate court chose not to address that aspect of Mr. Loggins claim on appeal."  *Id.* at 6.

Petitioner fails to understand the legal definition of deliberation.  Missouri Revised Statute § 565.020.1, in effect at the time of Petitioner's crimes, states: "A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter."  Section 565.002(3) defines deliberation as "cool reflection for any length of time no matter how brief."  Missouri courts have held "[d]eliberation may be inferred when there are multiple wounds or repeated blows."  *State v. Strong*, 142 S.W.3d 702, 717 (Mo. banc 2004)

At trial, there was evidence Petitioner stabbed Victim a total of twenty-five times.  With this evidence, a rational trier of fact could have found the essential elements of first-degree

murder, including deliberation, beyond a reasonable doubt. This evidence was cited to by the appellate court which correctly applied established Supreme Court precedent in affirming Petitioner's conviction. The appellate court also made a reasonable determination of the facts in light of the evidence presented at trial. Therefore, the appellate court's decision on direct appeal is entitled to deference. 28 U.S.C. § 2254(d). This claim will be denied.

      B.      *Claims Two, Three and Four – Motion to Suppress Evidence*

As Petitioner's second, third, and fourth claims are very similar, this Court will consider them together. In all three claims Petitioner alleges the trial court erred in overruling his motion to suppress evidence and by admitting into evidence the seizure of his cell phone including images captured from his cell phone. Specifically, Petitioner alleges the following: Claim Two alleges the search and seizure of Petitioner's cell phone was outside the scope of the search warrant; Claim Three alleges the search warrant affidavit did not establish a fair probability evidence of the crime would be found in Petitioner's cell phone; and Claim Four alleges the search and seizure of the web-based images on his cell phone were outside the scope of the search warrant.

Respondent argues this claim is not cognizable in this federal habeas proceeding. In all three claims, Petitioner claims a violation of his Fourth and Fourteenth Amendment rights.[2] Despite Petitioner's allegations his Fourteenth Amendment rights were violated, the grounds he pleads uniquely implicate the Fourth Amendment, which protects against "unreasonable searches and seizures" in the absence of probable cause. U.S. CONST. amend. IV. *See Gerstein v. Pugh*,

---

[2] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

7

420 U.S. 103, 115 (1975) ("the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest").  This Court will analyze the claims under only the Fourth Amendment as Petitioner fails to argue how the Fourteenth Amendment is applicable under the facts of this case.

The Supreme Court of the United States has held Fourth Amendment claims are not cognizable in a federal habeas action unless a petitioner did not receive a "full and fair opportunity" to litigate.  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  The Eighth Circuit has interpreted *Stone* to allow Fourth Amendment claims as a cognizable basis for habeas relief in two distinct situations: (1) when the "state provided no procedure by which the prisoner could raise his Fourth Amendment claim," or (2) when "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994) (en banc) (adopting the Second Circuit's test set out in *Capellan v. Riley*, 975 F.2d 67, 70 (2nd Cir. 1992)).

The first part of the test is "simple enough—either the state has a system available for raising Fourth Amendment claims or it does not (and we are unaware of any state that does not)." *Id.* at 1272.  Missouri provides a procedure for raising Fourth Amendment claims, including Missouri Supreme Court Rule 24.05 and Mo. Rev. Stat § 542.296.  Petitioner's claims do not fall under the first exception to the *Stone*-bar.

With respect to the second prong, whether a defendant was precluded from using the State's procedure due to an "unconscionable breakdown in the underlying process," the Eighth Circuit has stated, "it will be the rare case where there is a failure of that mechanism that reaches constitutional dimensions." *Willett*, 37 F.3d at 1272.  The Eighth Circuit further instructed "federal courts on habeas review of such claims are not to consider whether full and fair

8

litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." *Id*. at 1273.

The State of Missouri unquestionably afforded Petitioner an opportunity for full and fair litigation of his claims. Additionally, there is no evidence he may have been foreclosed from using the procedure because of an "unconscionable breakdown in the underlying process." *Id.* at 1272.  Indeed, the record establishes Petitioner had a full suppression hearing and on appeal raised the issues as a basis for seeking reversal.  Petitioner was given a full and fair opportunity to raise the claim.  Accordingly, Petitioner's Fourth Amendment claims are not cognizable under *Stone v. Powell*, and this Court will not grant relief on Claims Two, Three or Four.

    C.    *Claim 5 – Ineffective Assistance of Counsel*

In his fifth claim, Petitioner asserts he was denied effective assistance of counsel when his counsel failed to move to strike Venireperson Gholson for cause based on her inability to be fair and impartial as shown by her juror questionnaire.  Petitioner raised this claim in his post-conviction motion and in his appeal of the post-conviction motion court's denial of his claim.

The motion court found Petitioner failed to show "that the failure of his attorneys to strike Juror #4 from the panel resulted from unreasonable professional judgment."  ECF No. 28-12, p. 132.  The motion court found "[f]urther, [Petitioner] also failed to establish that he was prejudiced by his attorney's failure to question Juror #4 regarding her answer to question #7 or by their failure to strike Juror #4 from the jury panel." *Id.* at p. 133.

In concluding there was no merit to Petitioner's post-conviction claim, the Missouri Court of Appeals held:

> The day prior to the start of voir dire, a pre-trial conference was held where the parties discussed the completed questionnaires with the court and were given an opportunity to move to strike any prospective jurors for cause based on their answers. The following discussion occurred regarding Gholson:

9

| | |
|---|---|
| [The State]: | She indicated that she could not apply the law without regard to race [of] the victim on [question seven]. . . . [O]ther than that, she looks death qualified from her answers. |
| [Trial Counsel] | And yeah, I – Judge, I would – I think that the race question actually – kind of hindsight may have been a little bit [ ] confusing, because I think a number of people either left it blank or else answered no. And I don't necessarily, without any further explanation, felt [sic] that was really a legitimate answer. So maybe she needs to be talked to a little bit more rather than just strike her on the basis of that one "no." |

The court kept Gholson on the venire panel for voir dire.

Although Gholson was never specifically examined regarding her answer to question seven, the issue of race was revisited during general voir dire. Trial Counsel asked the jurors the following:

> And I think we asked this – we did ask this on the questionnaire as well, and frankly, I think as a group of attorneys we failed to put together a pretty good question on this. The issue about race. You're going to hear that Stephanie Fields was a white woman. Clearly, by looking at Vernell Loggins, I think you can all determine that he is an African-American man. And you will – I expect you will hear evidence that they knew each other to a certain degree, possibly had a relationship at some point. My question is this: Is there anybody here for whom that issue of race or, you know, the black-white issue is going to make them so uncomfortable that they think it's going to interfere with their ability to be fair and impartial to both sides? Okay. I'm not seeing any hands. I'm seeing several shakes of the head no. Okay.

Gholson ultimately served on the jury during Movant's trial and returned a guilty verdict.

…

Even if this Court were to assume *arguendo* that Gholson was an unqualified juror due to her answer to question seven, Movant is not entitled to relief because Trial Counsel articulated a reasonable trial strategy for not striking Gholson. *See McGuire*, 523 S.W.3d at 564-65 (similarly finding).

The motion court explicitly found Counsel's testimony to be "very credible." Both of Movant's attorneys testified they did not find Gholson's

10

answer to question seven to be a clear indication she was biased against Movant. Further, Trial Counsel employed the Colorado method when conducting jury selection in Movant's case, which caused them to exclusively identify and select jurors less likely to impose the death penalty. The court found the attorneys' voir dire strategy to be "a sound and reasonable trial strategy" in a capital murder case such as Movant's.

Moreover, Kenyon and Kerry testified they believed Gholson would have been helpful to the defense. Pursuant to the Colorado method, Counsel was focused on Gholson's views on the death penalty to the exclusion of all other factors. Gholson was assigned a Colorado method score of four based on her answers on the questionnaire and during voir dire, her demeanor, and her body language. This score reflected Counsel's impression that Gholson was more likely to sentence Movant to life imprisonment without the possibility of parole rather than to impose the death penalty. Accordingly, Trial Counsel wanted to keep Gholson on Movant's jury.

Based on the foregoing, we are not definitely and firmly convinced the motion court erred in concluding Movant's Counsel employed a reasonable trial strategy by not striking Gholson for cause. *See id.; see also McCoy*, 431 S.W.3d at 520. Thus, Movant has failed to satisfy the performance prong of the *Strickland* test and his claim must fail. *See McGuire*, 523 S.W.3d at 564-65 (similarly finding); *see also Bradley*, 292 S.W.3d at 565).

ECF No. 28-15, p. 12–13.

The decisions of the state appellate court are entitled to deference. 28 U.S.C. § 2244(d). The appellate court's application of *Strickland v. Washington*, 466 U.S. 668, 687 (1984) was reasonable in concluding trial counsel's strategy for not striking Gholson for cause was reasonable and Petitioner failed to demonstrate his counsel did not exercise the customary skill and diligence of a reasonably competent attorney. The appellate court's decision is not contrary to, nor does it involve, an unreasonable application of federal law. This claim will be denied.

    D.    *Claims 6 and 7 – Ineffective Assistance of Counsel*

In his sixth claim, Petitioner asserts he was denied effective assistance of trial counsel when his counsel waived any objection to the admission of his cell phone. Petitioner raised this claim in his motion for post-conviction relief and in his appeal of the motion court's denial of his

11

claim.  In his seventh claim, Petitioner alleges trial counsel was ineffective because they failed to challenge the search of Petitioner's iPhone even though the search warrant failed the particularity requirement

In concluding there was no merit to Petitioner's post-conviction claim, the Missouri Court of Appeals made the following findings:

> Defense counsel will not be found ineffective for failing to file a motion to suppress that would have been meritless. *Id.* (citing *State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992)).  Moreover, in order for a post-conviction movant to show *Strickland* prejudice as a result of counsel's failure to file a motion to suppress, the movant must establish that the motion would have at least had a possibility of success and that there was a reasonable probability the outcome of the proceeding would have been different had the evidence been excluded.  *Id.* (citing *Winfield v. State*, 93 S.W.3d 732, 736–37 (Mo. banc 2002) and *Mathenia v. State*, 752 S.W.2d 873, 875 (Mo. App. E.D. 1988)).

ECF No. 28-15, p. 16.

The appellate court's decision is entitled to deference. 28 U.S.C. § 2244(d). To establish his trial counsel was ineffective for failing to object, Petitioner must establish his counsel's performance was deficient and if not for his counsel's failure to object, the result of the proceeding would have been different. *Middleton v. Roper*, 455 F.3d 838, 849 (8th Cir. 2006). Petitioner cannot establish either prong of the analysis.  Furthermore, Petitioner does not establish he would have been acquitted had his counsel objected to the argument.  The Missouri Court of Appeals' decision to deny Petitioner's post-conviction claim is not contrary to or an unreasonable application of clearly established Supreme Court precedent nor was it based on an unreasonable determination of the facts in light of the evidence presented. These claims will be denied.

## IV.    CERTIFICATE OF APPEALABILITY

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2254 Motion.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Vernell Loggins's *pro se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [1] is **DENIED**.  Petitioner Vernell Loggins's Petition is **DISMISSED**, with prejudice.

SO ORDERED this 6th day of August, 2021.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE